**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Enterprises Car Company LLC, et al., | No. CV-21-01681-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Dilsher Ali, et al., | |
| Defendants. | |

Pending before the Court is Defendants' partial motion to dismiss, which is fully briefed. (Docs. 21, 24, 27.) The Court grants the motion in part.

**I. Background[1]**

Plaintiffs are principals in three limited-liability companies operating three Arizona dealerships that sell new and used vehicles. Defendants are agents of the State of Arizona associated with the Arizona Attorney General's Office ("AGO"), and their supervisors.

Sometime in 2018 Plaintiffs began buying more trucks for resale, including imported Ford Motors trucks, several of which are at issue here (the "target vehicles"). Imported vehicles are subject to inspection at port of entry, where the Department of Homeland Security ("DHS") inspects the imported vehicles and affixes a sticker indicating that the vehicle satisfies all federal standards. Ford Motors also affixes two stickers to each

---

[1] The Court recounts the facts in the light most favorable to Plaintiffs, as nonmovants. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The background comes entirely from the First Amended Complaint. (Doc. 9.)

of its trucks to signal compliance with certain certifications. The target vehicles arrived at Plaintiffs' dealerships with DHS and Ford Motor stickers, but Defendant Dilsher Ali believed them to be fake and the AGO opened a fraud investigation.

AGO investigators sought and received a warrant to search Plaintiffs' dealerships. The warrant, supported by an affidavit from Ali, authorized the search and seizure of all "computers and electronic storage devices, . . . cellular phones, iPads, and laptop computers" at the dealerships, but Plaintiffs themselves were not named in the warrant. Investigators executed the warrant at Plaintiffs' dealerships during business hours in October 2019. They detained employees and Plaintiffs and questioned them "without any advice of protected Constitutional rights [and denied] access to lawyers." The investigators seized Plaintiffs' and employees' personal devices and also "told employees they were required to give up any password to the phones[,] noting that they could just come back with a second warrant." Plaintiffs argue that no probable cause existed to seize any of their property.

As a result of harm suffered from the execution of the search warrant, Plaintiffs brought a four-count complaint under 42 U.S.C. § 1983, which creates a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or federal law. Counts I and II allege violations of Plaintiffs' rights under the Fourth Amendment, as incorporated against state actors via the Fourteenth Amendment. Count III appears to allege both a Fourth Amendment violation and a violation of unenumerated substantive due process under the Fourteenth Amendment.[2] Count IV alleges solely a violation of Fourteenth Amendment substantive

---

[2] Standing alone, the first eight Bill of Rights amendments constrain only the federal government, but the substantive guarantees of those amendments, including the Fourth Amendment, are incorporated and apply against the states via the Fourteenth Amendment's due process clause. *See Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2246 (2022); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). As such, all § 1983 claims based on the substantive guarantees of the Bill of Rights technically arise under the Fourteenth Amendment. For ease of understanding, however, the Court will label Plaintiffs' claims consistent with the underlying amendment that supplies the substantive guarantee. So, for example, the Court will refer to Plaintiffs' rights to be free from unreasonable searches and seizures as Fourth Amendment rights, even though these rights technically are Fourteenth Amendment rights when state actors, rather than federal actors, are alleged to have engaged in the unlawful conduct. In doing so, the Court distinguishes between, on the one hand,

1 due process. In their motion to dismiss, Defendants challenge only Counts III and IV, arguing that the conduct forming the basis of these claims is governed by the specific constitutional proscriptions and guarantees of the Fourth Amendment and therefore are not cognizable under a more general substantive due process theory.

## II. Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III. Analysis

The Fourteenth Amendment's due process clause provides substantive protections, which "bar[] certain government actions regardless of the fairness of the procedures used to implement them." *Cnty of Sacramentov v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). A substantive due process claim cannot survive, however, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior." *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). In that case, the particular amendment, "not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* (quoting *Albright*, 510 at 273) (cleaned up). The threshold question, then, is whether the claim is "covered by" a particular amendment. *Id.* at 843. And this makes sense: myriad "guideposts" dot the landscape trod by earlier amendments, whereas substantive process walks a rather barren wilderness. *Id.*

---

Fourteenth Amendment claims predicated on the substantive proscriptions and guarantees enumerated in the Bill of Rights and, on the other, Fourteenth Amendment claims predicated on the unenumerated guarantee of substantive due process.

Plaintiffs, citing *Lewis*, *Chavez v. Martinez*, *Tobias v. Arteaga*, and *Breithaupt v. Abram*, seem to argue that substantive due process also applies to conduct explicitly covered by the Fourth Amendment, so long as that conduct "shocks the conscience," much like suspenders might help a belt hold up pants. (Doc. 24 at 8.) This misreads the cases. In *Lewis*, the Supreme Court foreclosed the belt-and-suspenders approach, explaining that if "a more definite provision of the constitution" applies to the conduct, it does so "to the exclusion of any possible application of substantive due process." 523 U.S. at 842. As for *Chavez* and *Tobias*, they affirm that substantive due process applies to coercive interrogation techniques because the self-incrimination clause of Fifth Amendment applies only to the *admission* of confessions obtained by coercive techniques, not the techniques themselves. *Chavez v. Martinez*, 538 U.S. 760, 770-74 (2003); *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021). And *Briethaupt* affirms the converse as it relates to the Fourth Amendment: substantive due process prohibits *convicting* a defendant based on evidence obtained through conduct that shocks the conscience, *Briethaupt v. Abram*, 352 U.S. 432, 435 (1957), and the Fourth Amendment says nothing about convictions. The Court is left with *Chavez*'s bifurcation: substantive due process applies only to conduct not governed by the text of a specific amendment.

### A. Count III

In count III, Plaintiffs allege that Defendants sought a "search warrant," which was "based on intentionally false and misleading statements with the sole intent of misleading a judge to issue the warrant." Once the warrant issued, Plaintiffs allege, Defendants improperly executed the search warrant, seizing "property the Dealerships used to conduct business," "everyone at the dealership," including Plaintiffs themselves, as well as theirs and employees' personal electronic devices. (Doc. 9 at 22.) The Fourth Amendment unquestionably governs this conduct. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) (explaining that the Fourth Amendment allows law enforcement to detain an individual at the scene of a search, ask a few questions, and "request consent to search the individuals' luggage"); *see also United States v. Cano,* 934 F.3d 1002, 1017 (9th Cir. 2019) (treating

manual searches of cell phones like a manual search of luggage).  To the extent Count III is predicated on the substantive guarantees of the Fourth Amendment, it can proceed.  But to the extent Count III is predicated on more general notions of substantive due process, it cannot.

Going on, Plaintiffs further allege that Defendants failed to warn them and their employees of their constitutional rights and denied them the right to counsel.  Such allegations go to *Miranda* and its progeny, which developed a set of prophylactic rules to protect the Fifth Amendment right against self-incrimination.  *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991).  But the self-incrimination clause of the Fifth Amendment does not apply "unless and until allegedly coerced statements were *used* against the suspect in a criminal case," *Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009), and Plaintiffs do not allege that any statements obtained were used in such a manner.[3]

Instead, this part of Plaintiffs' claim seems to be based on the allegedly coercive interrogation techniques themselves, untethered from any constitutional proscriptions on the later use of the fruits of those techniques at a trial.[4]  Substantive due process provides protections against coercive interrogation techniques; however, it does so only when an interrogation technique "'shocks the conscience' and '"violates the decencies of civilized conduct."'"  *Stoot*, 582 F.3d at 928 (quoting *Lewis*, 523 U.S. at 846).  Plaintiffs allege that Defendants "forced" individuals to answer questions but do not allege facts about what sort of questions were asked or how the alleged coercion occurred.  Such spare allegations are insufficient to state a plausible coercive interrogation claim.  *See Chavez*, 538 U.S. at 774 (merely "persistent" questioning is not sufficiently coercive and conscience-shocking to state a claim under substantive due process); *Breithaupt*, 352 U.S. 435 (holding that a blood sample drawn "under the protective eye of a physician" from unconscious suspect did not violate substantive due process because it was neither "brutal" or "offensive").

---

[3] In any event, the Supreme Court recently held that *Miranda* violations are not cognizable in § 1983.  *See Vega v. Tekoh*, 142 S.Ct. 2095 (2022).

[4] One wonders why Plaintiffs subtitled count III "Unreasonable Search" when parts of count III appear to be based on allegedly coercive interrogations, rather than unreasonable searches and seizures.

Plaintiffs get ahead of their skis by arguing that count III includes a substantive due process claim on faith that discovery will surface the supporting facts. Alleging sufficient facts to make a claim plausible on its face is a prerequisite to obtaining discovery on that claim. If a claim is unsupported by sufficient factual allegations, the result isn't a fishing expedition—it's dismissal. *Twombly*, 550 U.S. at 555. What's more, Plaintiffs allege that they and their employees were the ones coercively interrogated, so they shouldn't need any discovery to allege facts about the nature of the interrogations. Having failed to allege facts plausibly showing that the manner in which they and their employees were questioned "shocks the conscience," Plaintiffs' substantive due process claim predicated on allegedly coercive interrogation techniques must be dismissed.

### B. Count IV

In count IV, Plaintiffs allege that Defendants "unlawfully seized" Plaintiffs' "vehicles pursuant to the search warrant," and that Defendants returned "all but one," purportedly violating their substantive due process rights. (Doc. 9 at 35-36.) The Fourth Amendment governs this conduct, centered as it is on the warrant-supported seizure of property. In response, Plaintiffs argue that this claim also carries a civil forfeiture flavor, which would place it outside Fourth Amendment coverage. (Doc. 24 at 12.) But Plaintiffs do not allege that any vehicle was forfeited. Thus, count IV cannot proceed as a substantive due process claim.

### IV. Conclusion

Plaintiffs complain that they were subject to an unreasonable search and seizure of their property. Such conduct unquestionably is governed by the substantive proscriptions and guarantees of the Fourth Amendment. Plaintiffs' attempt to litigate the reasonableness of the search and seizure twice over—once under the Fourth Amendment and again under substantive due process—is misguided. Therefore,

**IT IS ORDERED** that Defendants' partial motion to dismiss (Doc. 24) is **GRANTED IN PART**. Count III is dismissed only to the extent it is predicated on general notions of substantive due process. It may proceed to the extent it is predicated on the

substantive proscriptions and guarantees of the Fourth Amendment.  Count IV is dismissed entirely.

Dated this 12th day of September, 2022.

Douglas L. Rayes
United States District Judge